UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EPIFANIO VALENTIN,

                              Plaintiff,                       DECISION AND ORDER

-vs-

                                                                   1:18-CV-1361 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

INTRODUCTION

Plaintiff Epifanio Valentin brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income Benefits ("SSI"). Plaintiff claims to be disabled due to problems with his neck and spine. Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). June 28, 2019, ECF No. 12; Sept. 26, 2019, ECF No. 17. For the reasons set forth below, Plaintiff's motion is granted [ECF No. 12], the Commissioner's motion is denied [ECF No. 17], and the matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. Plaintiff filed his application for SSI benefits on May 12, 2015, claiming disability due to "back injury," "neck problems," "problems with the entire right side," "pinched nerve," and "two herniated discs." Transcript ("Tr.") 201, Apr. 4, 2019, ECF No. 9. A notice of disapproved claim was sent to Plaintiff on August 12, 2015,

1

after which he requested a hearing by an administrative law judge. Tr. 81, 87.

Plaintiff's request was granted, and his hearing was held on December 4, 2017, before an Administrative Law Judge ("ALJ") in Buffalo, New York. Tr. 33. Plaintiff was represented by Dennis Clary, an attorney. Tr. 36. Also testifying at the hearing was vocational expert Kenneth Jones. Tr. 60–68.

In her decision on February 1, 2018, the ALJ found that Plaintiff was not disabled. Tr. 13. Plaintiff then applied to the Social Security Administration's Appeals Council for review of the ALJ's decision. Tr. 1. On October 11, 2018, the Appeals Council found that the reasons Plaintiff submitted did not provide a basis for changing the ALJ's decision, and denied Plaintiff's request for further review. Tr. 5. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

In seeking reversal of the Commissioner's decision, Plaintiff claims that the ALJ's assessment of Plaintiff's residual functional capacity is not supported by substantial evidence in the record. Pl. Mem. of Law, 5–6, June 28, 2019, ECF No. 12-1.

STANDARD OF REVIEW

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on a claim for SSI benefits. Among other things, §405(g) provides that a finding of fact by the Commissioner is "conclusive" if the finding is supported by substantial evidence. "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp.3d 260, 264 (W.D.N.Y. 2014) (citations omitted). However, before determining whether the Commissioner's findings are supported by

2

substantial evidence, a reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Provided the proper legal standards were applied, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled . . . ." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

The law defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether an SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the sequential evaluation. *Melville*, 198 F.3d at 51. At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

The ALJ's Decision

In her decision in this case, the ALJ followed the five-step sequential evaluation process and found that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 12, 2015. Tr. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: status post anterior cervical discectomy and fusion (ACDF) surgery; cervical disc disease; cervical radiculopathy with bilateral lower extremity weakness and bilateral numbness in hands. *Id.* At step three, the ALJ determined that Plaintiff's impairments, either individually or in combination, did not meet or exceed the severity of one of the Commissioner's listed impairments. Tr. 22.

Before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 416.945. After considering the entire record, the ALJ determined that Plaintiff had an RFC that included:

> the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except occasional pushing and pulling . . . Frequent but not

4

constant rotation, flexion and extension of neck movement meaning between 1/3 to 2/3s of the time can look down, turn his head right or left, look up, and hold head in a static position.[1]

Tr. 23.

In support of her RFC determination, the ALJ concisely summarized Plaintiff's medical history, which included, in pertinent part:

> Consultative examiner, John Schwab, D.O., evaluated the claimant on July 7, 2015. [Claimant] alleged that he was in constant pain with radiation to the right arm . . . Examination revealed a normal gait but he declined to heel and toe walk. Squat was full and he did not use any assistive devices. He was able to rise from a chair without difficulty. He had decreased range of motion in the cervical and lumbar spines, but full range of motion in the upper and lower extremities. Dr. Schwab opined the claimant had a mild restriction for moving his head in any direction.
>
> In June 2016, the claimant was evaluated for ongoing neck and shoulder pain that was progressively worsening . . . On examination, he had tenderness throughout the spine with some decreased range of motion . . . The claimant was diagnosed with neuropathy and right shoulder pain. The clamant returned in September 2016 . . . Range of motion in the neck continued to be limited. He was diagnosed with spinal stenosis. The claimant underwent anterior cervical discectomy and fusion (ACDF) on February 27, 2017. Post surgically, the record shows his . . . [m]otor strength was grossly intact but he continued to have neck pain.
>
> During a follow-up evaluation in June 2017, the claimant . . . continued to complain of neck pain with radiation to the arms. He reported associated arm numbness and muscle spasms in the neck. He said he had decreased strength in the arms and hands . . . An updated MRI of the cervical spine showed a paracentral disc bulge resulting in stenosis at C7-T1. The claimant attended physical therapy after surgery due to marked guarding and decreased range of motion . . . He demonstrated marked weakness in cervical stabilizing musculature and he had difficulty riding in cars . . . After one month of physical therapy, his fusion was found to be stable and overall, his pain was improved.
>
> During an examination in September 2017, the claimant reported that he had pain issues, reporting pain in the neck, low back and right shoulder . . . . Bernard Ryan, PT, completed a physical assessment on November 20,

---

[1] This selection of the ALJ's RFC determination omits several other stated limitations that are not relevant to the matters at issue.

5

> 2017. [P.T. Ryan] stated the clamant [sic] had muscle instability in the cervical spine and he was limited to lifting 5 pounds frequently and 10 pounds occasionally. Standing and walking was limited to one-hour total and 15 minutes without interruption. He was also limited to sitting for one-hour total in an eight-hour workday and up to 30 minutes without interruption . . . Mr. Ryan opined the claimant was disabled because he had decreased cervical range of motion with cervical muscle weakness creating difficulty maintaining postural support while sitting or standing. Based on this report, the claimant would only be able to engage in sitting, standing or walking for three hours total in an eight-hour workday. However, Mr. Ryan failed to report what the claimant would do during the remaining five hours, nor did he report what he based this opinion on.

Tr. 25–26 (internal citations to the record omitted).

Based on her RFC determination, the ALJ found that Plaintiff can do work. Tr. 26. Further, the ALJ found at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically, a table worker, an ink printer, or a sorter. Tr. 27. This finding was based on the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, as well as testimony from the vocational expert at Plaintiff's hearing. Tr. 27. Significantly, the vocational expert testified that the above-cited jobs were available to someone who had capacity for the "frequent" neck movement cited in the RFC, but that a capacity for only "occasional" neck movement would be "work preclusive." Tr. 66.

Plaintiff contends that the ALJ's RFC determination with respect to the Plaintiff's capacity for neck movement is not supported by substantial evidence in the record. Pl. Mem. of Law at 4 ("there is no evidence to support that Plaintiff could perform the neck movements elicited by the ALJ at a frequent level"). The Court agrees.

The Meaning of "Substantial Evidence"

A finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

To determine whether a finding is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). The reviewing court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

Application to Plaintiff's Case

Despite a fairly lengthy treatment record in this case, there is limited medical opinion regarding Plaintiff's functional limitations, particularly as the limitations pertain to Plaintiff's capacity for neck movement in a work setting.

Plaintiff visited multiple doctors for treatment of his neck and back pain. In addition to physical therapy between December 2013 and March 2014, the record shows that Plaintiff visited Dr. Robert Stasiak and Dr. Robert Suaret, both chiropractors, on

7

multiple occasions between 2013 and 2017. Tr. 255, 257–278, 294–306. Additionally, on a referral from Dr. Suaret, Plaintiff visited the hospital several times between March 2016 and January 2017 for an evaluation of his neck and spine. Tr. 341–352. This evaluation culminated in the ACDF surgery performed by Dr. Joseph M. Kowalski in February of 2017. Tr. 384–386. Plaintiff then saw Dr. David L. Capaccio on at least two occasions post-ACDF surgery for continuing neck pain and numbness. Tr. 369–373, 389–392.

Despite the multitude of doctor and hospital visits, the only medical opinion evidence in the record from an acceptable medical source is the opinion of the consultative examiner, Dr. Schwab, from 2015. Dr. Schwab opined that Plaintiff has only "a mild restriction to moving his head in any direction." Tr. 313. Yet the ALJ gave Dr. Schwab's opinion little weight, because Dr. Schwab's opinion did not take into account any limitations that may have been caused by Plaintiff's 2017 neck surgery. Tr. 26.

In this context, Plaintiff contends the ALJ ought to have given significant weight to the opinion expressed in the RFC Questionnaire completed by physical therapist Bernard Ryan ("P.T. Ryan") in November 2017, many months after Plaintiff's ACDF surgery. Tr. 395–397. At the end of the questionnaire, P.T. Ryan expressed the opinion that Plaintiff's neck mobility was significantly restricted. Ryan stated that Plaintiff is disabled by "a pronounced loss in cervical [range of movement] and cervical muscle weakness" that creates problems in both sitting and standing. Pl. Mem. of Law, 5–6; Tr. 397.

Plaintiff acknowledges that Ryan, as a therapist, was not considered an "acceptable medical source" under the regulations. *Id.* Nevertheless, Plaintiff points

8

out that although "other sources" such as Ryan cannot establish the existence of a medically determinable impairment, information from such other sources may be used to provide insight into the severity of the impairments and how the severity affects the individual's ability to function. *Id.* (citing SSR 06-03P (S.S.A. Aug. 9, 2006)). Plaintiff suggests that P.T. Ryan's opinion is useful precisely for the purpose of determining the severity of Plaintiff's neck impairment.

In response, the Commissioner notes that an RFC finding is not defective merely because it "does not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." Def. Mem. of Law, 17, Sept. 26, 2019, ECF No. 17-1 (quoting *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018)). The Commissioner contends that because the ALJ considered the entire record, and complied with the regulatory framework, the ALJ legitimately and "reasonably translated the physical limitations she found to be supported by the overall record into concrete, work-related terms to address the impact of [Plaintiff's] neck impairment on his ability to work." Def. Mem. of Law at 18.

The Court disagrees with Defendant's arguments as they relate to the particulars of the present case. The Court finds absence of opinion evidence specifically supporting the ALJ's RFC determination that Plaintiff is capable of "frequent" neck movement is reversible error. *See, e.g., Morales v. Colvin*, No. 3:16-CV-0003(WIG), 2017 WL 462626, at *2 (D. Conn. Feb. 3, 2017) (finding that "the error requiring remand lies in the lack of opinion evidence . . . supporting the RFC determination.")

The Commissioner considers opinions from medical sources on the existence and severity of a claimant's impairment, but the final responsibility for deciding a claimant's

9

residual functional capacity is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2). Nevertheless, an ALJ may not simply substitute his own lay opinion for that of a medical expert. *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). "[W]hen medical findings merely diagnose impairments without relating diagnoses to specific residual physical, mental and other work-related capacities, an [ALJ]'s determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence." *Kinslow v. Colvin*, No. 5:12-CV-1541 GLS/ESH, 2014 WL 788793, at *5 (N.D.N.Y. Feb. 25, 2014). *See also Ramos v. Colvin*, No. 13-CV-6503P, 2015 WL 925965, at *9 (W.D.N.Y. Mar. 4, 2015) (holding "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, as a general rule, the Commissioner may not make the connection himself.")

In this case, the ALJ thoroughly reviewed and discussed Plaintiff's treatment records. Tr. 26–27. However, the ALJ accorded little weight to the only two opinions in the record that addressed Plaintiff's capacity for neck movement in a work setting: the opinions of Dr. Schwab and P.T. Ryan. Tr. 27. The assessment of Plaintiff's neck mobility in the ALJ's RFC determination is more restrictive than those suggested in Dr. Schwab's opinion from July 2015, and it is less restrictive than the mobility suggested by P.T. Ryan's RFC Questionnaire from November 2017. Yet the ALJ provides no clear explanation of the means by which she arrived at her determination. Consequently, the Court is left to guess at how the ALJ arrived at the functional limitations in neck mobility embodied in her RFC.

Because there is no medical source opinion that directly supports the ALJ's RFC determination in this case, and no explanation as to how she reached her determination with respect to Plaintiff's neck mobility, the Court finds that the determination lacks substantial evidentiary support. *Kinslow v. Colvin*, 2014 WL 788793, at *5. The ALJ's decision is therefore reversed, and the matter is remanded to the Commissioner for further proceedings. *See Roscoe v. Berryhill*, No. 17-CV-6502P, 2018 WL 4519880, at *7 (W.D.N.Y. Sept. 21, 2018) (collecting cases); *Seil v. Colvin*, No. 15-CV-6275 CJS, 2016 WL 1054759, at *3 (W.D.N.Y. Mar. 17, 2016).

## CONCLUSION

For the reasons discussed above, the Court finds that the record does not contain "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's RFC determination regarding Plaintiff's neck movements. *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Hence, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 12] is granted, Commissioner's motion [ECF No. 17] is denied, and the ALJ's decision is reversed. The matter is remanded to the Commissioner for further consideration under 42 U.S.C. 405(g), sentence four.

So Ordered.

DATED: February 28, 2020
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge